All right, Mr. Lang, you're up first, sir. May it please the court, counsel. Secured creditors are entitled to special protection under the law and especially under the Bankruptcy Code. That special protection includes that a secured creditor should not have to put up with its borrower converting its collateral, absconding with its collateral, and doing so with impunity. That's central to this case. TGL lent millions of dollars to what we call the rooftop companies, situated in Southeast Asia. They manufactured, or had manufactured for them, hobby drones, and the brand was called Propel. Mr. Matloff had been a majority owner, and he managed that company since its inception. In 2016, a loan was granted by TGL to the rooftop companies, Mr. Matloff guaranteed it. It was renewed in 2017. Mr. Matloff, in early 2018, saw his company going down the drain. He was not doing well, and what he said to TGL was, I know you have collateral interest in the accounts receivable of the rooftop companies on these sales of drones. I know you also have a lien on the proceeds. The cash that goes into specific accounts in Singapore, and called charged accounts, where TGL had the right, under certain circumstances, if rooftop was in default, to simply freeze those accounts. But Mr. Matloff, on March 1, 2018, wrote an email to the representatives of TGL, and to others, and he said, you know what? I've got to pay some bills, and I'm going to take your collateral out of those charged accounts, and I'm going to use that money, because I want to preserve this company. He went ahead and did it, millions of dollars that belonged as collateral to TGL, as well as other creditors. In the space of one year, from March 18, through the early part, and to the middle part of 2019, $45 million of revenues went through that company, and that's by their own documents that they produced, $45 million that they got. It didn't go to the secure creditors, who had the right to a good part of that money. It went to a company named AMAX, that was owned by a friend. As I understand, it was a Chinese company. Most of the work was done in China, but the money was funneled to AMAX, under the theory that AMAX would go ahead and pay the bills. Well, as soon as things got really hot, Mr. Matloff, in February of 2019, less than a year after he said, I'm taking your money, entered into a license agreement with AMAX that said, here, you can have a license to manufacture my hobby drones. Gave it to them, they started doing the manufacturing and sale of the hobby drones, took it right out of the rooftop, and then they went into bankruptcy a couple months later. The first bankruptcy of several was in April 2019. Then, when Mr. Matloff himself went into bankruptcy, remember, he guaranteed the millions of dollars of loans to TGL. When Mr. Matloff went into bankruptcy, interestingly enough, he went to work for AMAX, under what he called a consultancy agreement. He went to work selling the same drones that had been manufactured and sold by rooftop, and went to work on a commission basis, and brought along several of his employees. Now, I assure you, TGL didn't sit by idly during this year. They filed suit almost immediately after Mr. Matloff wrote them this March 1 email. They filed suit in Singapore. This was all based in that area, in Asia. Filed suit, Mr. Matloff tried to compel arbitration, and he got it. And that process took most of that time, that year. And when TGL got a judgment through that arbitration, and in court, Mr. Matloff started filing the bankruptcies. So we have an interesting scenario here. Mr. Matloff has a financial strain company in Extremis. He transfers, just says, I'm taking your money, transfers it through AMAX, licenses the product through AMAX, goes to work for AMAX, and he wants to discharge in bankruptcy. Fairly sweet deal for him, but not very sweet for TGL. TGL was fully secure in March of 2018. When bankruptcy occurred, it was left holding an empty bag. It had nothing. $8.1 million it sold. Because of that, TGL filed an emissary proceeding to bar Mr. Matloff's discharge, because he was a guarantor, and he also was a control person. Under the bankruptcy code, he ran the show, even though sometimes he testified that maybe he didn't, but he qualified for that. So they filed that, and one of the claims I want to focus on with the court now is issue number three that we raised. And that is a claim that was brought pursuant to bankruptcy code 727A2, which says, in summary manner, a debtor's discharge will be barred if the debtor transferred property of the debtor within one year of bankruptcy with the intent to hinder, delay, or defraud. Plain language, hinder, delay, or defraud. I know there was an exchange about the defraud, but was there anything in the record about hinder or delay? The testimony and the evidence relates to hinder or delay. And the courts of the Fifth Circuit have distinguished fraud from hinder or delay. And the error that we start with, one of them on this particular issue, is that the bankruptcy court said you must prove intentional fraud to be successful TGL on this claim. But that's not the law of this circuit. In re LaBelle, 2008, Middle District, Louisiana, it says, intent to hinder or delay, even if not fraudulent, will trigger loss of a debtor's discharge. We cite Henry Womble from the Northern District, 2003. LaBelle also says, the intent to hinder or delay is shown by evidence of intent to act improperly to make it difficult for a creditor to collect the debt. Different level. Now, this court has not directly spoken on 727A2. But this court has spoken about a sister provision of the bankruptcy code, 548A1. And that's in the Wiggins case. In that case, husband and wife had a very nice home. Husband decided to file bankruptcy because he had a lot of business debts. Didn't want to have the wife file it. So what they did was they partitioned their homestead. Apparently a very valuable homestead, according to this court's opinion. The idea was to preserve the wife's homestead exemption. And the creditors could have anything above the statutory homestead exemption on the husband's half. This court went into great detail, saying, hinder, delay, or defraud are distinct bases for a claim under 548. Hinder, or delay, or defraud, separate. And this court also cited the United States Supreme Court in Shapiro versus Wilgus, 1932, but it still makes sense. And it said, a transaction is illegal if made with intent to defraud. But it is equally illegal if done with the intent to hinder or delay. So this court said that plain language is disjunctive. Hinder, delay, or defraud. So you can separate them out. This bankruptcy court, as I said, said, you must prove fraud. And I believe that's at page 90. It's just up and down. That's what he said. But did you have distinctly or separately assert the 727, hinder or delay? Or is your argument, because you were required to assert the fraud, your hinder and delay argument was sort of inherent in that? I'm saying that that is the error of the court, because the court said, this is what you've got to prove, despite the language. And the court is bound to, as we all know, bound to apply the law to the facts. Did you pursue it? Did you pursue the hinder or delay argument? We had it in our pleadings, Your Honor. The pleadings said, Matloff sought to avoid or hinder TGL's ability to exercise remedies on the charged accounts. That's at ROA 547, paragraph 25 of the complaint. In the post-trial brief, and by the way, the only briefing that I'm aware of, I didn't try the case, the only briefing I'm aware of is the parties simultaneously filed post-trial briefs for the court. And in that post-trial brief, it said that TGL claimed Matloff made these transfers to AMAX to avoid TGL's contractual rights. And that's the critical element under Fifth Circuit law, is the avoidance of a secured creditor's rights. Matloff acted to avoid TGL's control over the charged accounts. ROA 20,087-88. So the pleadings were there. It shouldn't be a surprise to anybody. And the evidence was there. And the court just said, I'm sorry, you've got to prove fraud. And that's not the law. In re LaBelle says that. This court Wiggins said, you don't have to prove fraud. It could be hinder or delay. And in the case of the Wiggins, the court said this, and I found it very interesting. Mr. and Mrs. Wiggins said, well, we did this to preserve, to preserve Mrs. Wiggins' homestead exemption. But that is the mirror of prohibiting creditors from getting their debts paid. Same thing that happened here. Mr. Matloff said, I'm going to take your money. I'm going to take your collateral. And I'm going to do it because I know you can freeze those accounts. And I want to pay some creditors. And I want to preserve the business. Well, that doesn't get him by the statutory prohibition. And there's no affirmative defense under 727A2 by any means. So the court made that error. And it made another error on the 727A2 claim. It said, effectively, that TGL had to prove, well. Finish your sentence. OK, it had to prove harm. And that is not required by the law, by Henry Womble, Henry Jones, Henry Herb, a long list of cases that we've seen. And in ROA 127, the court said specifically, you didn't prove that you had an interest in those 21 transfers to AMAX of $846,000. That's not the burden. And when the court applies the wrong law, this court has said many times, the findings of fact are not insulated from the clearly erroneous, clear error. All right, we have your opening argument and your reserved time for your co-counsel to rebuttal. We'll hear from Mr. Cooley. Thank you, sir. And we rely on our briefs for the rest of our opening. Court, please. May it please the court. My name is Michael Cooley, and I'm counsel for the appellee, together with my co-counsel, Darren Scott Matloff. In this case, your honors, I want to take a big picture approach for a moment. The bankruptcy court in this case did its job. Over the course of a four-day trial, the court assessed the credibility of six live witnesses, four more by deposition, was presented with, and had the opportunity to review hundreds of exhibits and heard testimony about the content and the maintenance of thousands of additional financial records. The bankruptcy court identified the standards set by the code and Fifth Circuit precedent and methodically applied that law to the evidence presented in a 140-page opinion with over 400 record citations. In the words of the district court, which considered this issue among others, the bankruptcy court systematically evaluated each of the witnesses and the evidence presented at trial. Now, in this appeal, I believe that TGL is asking this court to do two things. Number one, to ignore the applicable standard of review, which in this case, for nearly every point raised by TGL, is clear error, as I will explain in a moment. Well, not for legal questions. I'm sorry? Not for legal questions. Not for legal questions, that is correct. And I fully intend to address 727A2. But as the court may have observed in their papers, they raise a variety of issues, not just the one addressed by Mr. Lang here today. And then second, and I will come to this in just a moment as well, TGL is asking this court to deem as legal error what I respectfully believe is TGL's misinterpretation of what the bankruptcy court actually said in that opinion. Now, with respect to the standard of review, the reason I take a moment to address this at the outset, because normally this is fairly straightforward, as I recognize, Your Honor, is that in this case, there are, I believe, what can fairly be described as a variety of questions raised that involve mixed questions of fact and law, questions where there is a legal standard, there are facts and findings of fact made by the court, but then the real rub of this appeal centers on how the court applied the law to the facts. And as the Supreme Court said in U.S. versus Lakeridge, which was the 2018 decision on this very type of issue, where a mixed question asks a court not to expound upon the law, but to marshal and weigh evidence, make credibility determinations, and so forth, the court held such determinations are reviewed only for clear error in deference to the fact finder's unique position. That, by the way, was also a bankruptcy case involving the question of whether or not someone was an insider for the purposes of ballot tabulation in a bankruptcy plan confirmation process. This court, as well, has recognized this distinction between more fact-specific and more legal-specific questions. In Bouchard Transportation Court just last year, at 74 F 4th 743, which held that whether a breakup fee and expense reimbursement met the statutory standard for allowance is a quintessential mixed question requiring deference to the trial court. And in Trendsetter HR 949 F 3rd 905, where the issue was whether or not a particular fee was unconscionable, the court described it as mathematically complex, but legally straightforward. Your Honor, coming to the question of the 727 A2 claim, the intent to hinder, delay, or defraud claim under 727, TGL contends, as Mr. Lang describes, that the bankruptcy court failed to consider acts to hinder or acts to delay separately from acts to defraud. And I would note, Your Honor, we acknowledged in our papers that the statute is written in the disjunctive and does, in fact, refer to the notion of a trio of acts to hinder or delay or defraud. But in each instance, all of those are preceded by the same phrase, the debtor with intent. And that is the threshold element, and that is the real thrust of 727 A2. To the question, Judge Clement, that you asked about whether this was raised, respectfully, I believe it was not raised in their post-trial brief. The record at page 20085 shows only the generic reference to the statutory language and focus on the notion of a fraudulent transfer. Indeed, in that post-trial brief, the TGL cites to the traditional badges of fraud test that we're all very familiar with as the proper standard to determine the requisite intent for the claim as they presented it. That is found in the record at 20086. I would also note that in their appeal to the district court, in the record at 189, the court will see that this issue was not raised at the district court level. And as for the complaint itself, it only contained the bare sort of recitation of the statutory language at record 556 and 555. Why shouldn't we just remand it? Your Honor, I believe that the issue, well, in the first instance, I would submit that it should be dismissed under the relief should be denied under the plain error review standard as we laid out in our papers. The reason I submit that it should not be remanded is that the court here undertook that contextual analysis. In the record at page 116, 124, and 127, so multiple points in the memorandum opinion, the bankruptcy court applied precisely the contextual analysis that TGL said was the correct standard and consistent with what this court said in the Wiggins versus Reed case. Because in that case, it was a little bit different from the facts here. Because in that case, the Fifth Circuit looked at a variety of cases, Brooke Credit versus LaBelle for partners, and said, we recognize that whether it is hinder or delay or defraud, courts take a contextual look at the question of whether or not the requisite intent was there. But in the Wiggins case, the court said we do not need to undertake that analysis or make that decision here today for the reason that the debtor testified explicitly that the transfers were made for the purpose of, quote, shielding our assets from creditors. That admission was made by the debtor in that case. And so the Fifth Circuit held it was not necessary for them to undertake the contextual analysis, but nevertheless acknowledged that the practice employed by other courts who had faced this issue was the correct one. And in this case, as I said, Your Honor, on the threshold question of wrongful intent, if you will, the bankruptcy court did undertake that contextual analysis, the very one that TGL at trial said was the correct standard, including whether to consider whether the transactions were made for a legitimate business purpose at pages 124 and 25 of the record, citing the Moreno case from this circuit. And the bankruptcy court concluded, based on the wealth of evidence that the court considered, that TGL had failed to establish that the funds were its own collateral. Indeed, the court described how the evidence came out at trial that much of the funds in these charged accounts belong to other creditors. And while that doesn't mean that a creditor is required to show harm, it begs the question of how that creditor could prove wrongful intent when that creditor technically had no relationship to those dollars to begin with. Were the transactions consented to by the other creditors? Not in the record. But that was certainly not something that TGL chose to prove or attempt to prove. The evidence in the record, as the court described it, showed that these transfers were part of an established business practice. AMAX was used to replace another intermediary who had historically been used to pay vendors in China. And there was testimony as to why that was a necessary part of the business. The court found that the transfers were actually intended to benefit TGL by preserving the business in the record on appeal at 128, based on the testimony. And finally, that the transactions were shown to have gone entirely to pay actual rooftop manufacturing and operating expenses. There was no evidence to show that a single dollar of those funds went to Mr. Matloff himself. The other thing I would simply note here, and we raised this in our papers as well, and the bankruptcy court observed this also, is that the appeal on this particular issue, 727A2, ignores the fact, overlooks the fact, that the complaint only alleged a single $25,000 fraudulent transfer. Just one for $25,000. During the pretrial period and at trial itself, Mr. Matloff objected repeatedly on the record and in a variety of procedural means to what appeared to be attempts by TGL to constructively amend the pleadings to add various other alleged baskets of fraudulent transfers. And in his ruling, the bankruptcy court held, at page 125 of the record, that that objection to these attempted constructive amendments had merit, but nevertheless went on to address the various baskets of transfers that had been alleged and described, testified to, by TGL at trial. And so I would submit, Your Honor, for that reason as well, that particular claim should be denied as to relief. I see I have time left, Your Honor, but candidly, from the appellant's standpoint, or from the appellee's standpoint, unless the court has additional questions for me, I would end simply where I began. Well, I mean, the bankruptcy court has 140 page memorandum of opinion you laid out in terms of the trial. So if it was solely a matter of the appeal being based on credibility findings, as you seem to argue, we know what that's standard. But it does appear, at least, his argument in totally that there were mixed questions of law and fact, but that the bankruptcy court made some legal errors front end that require a remand. So is it your argument that to the extent that we have it, at best or worst, they're just mixed questions? And the credibility determinations of the bankruptcy court should prevail, as opposed to, do you not think any of the legal arguments he's making have any potency that should give us pause? Do you understand my question? I do, indeed, Your Honor. And I will go ahead and take a moment to address, because there were some what I think TGL characterized as pure legal issues with respect to some of the other claims. But on examination, Your Honor, each of those, I believe, is, in fact, not a true legal issue, i.e. a situation in which the bankruptcy court failed to apply the correct standard. For example, with respect to the claim asserted by TGL under 523A2, this would be the million-dollar bonus issue. You may recall the false representation or actual fraud. The representation alleged to have been false was a representation made in these side letters, a series of side letters executed between the various parties. But as the court observed, there was no mention there of the magnitude of the bonus or even the existence of the bonus. There was merely a generic reference. And the legal error that TGL claims in this situation is that, although the bankruptcy court referenced the standard of justifiable reliance, which is the correct standard, TGL contends that the bankruptcy court erroneously applied the stricter, more rigorous, reasonable reliance test by requiring evidence that TGL conducted an investigation. But here's the rub of that issue. TGL did not claim that Mr. Matloff represented to them the existence of a bonus, nor that it was represented to them in the side letters. Rather, at trial, TGL's representative, Danny Yee, claimed to have discovered these advances, quote, in our subsequent due diligence prior to agreeing to the extension at page 21770 of the record. And so to the extent the bankruptcy court focused on the quality of TGL's investigation, that reflected not a divergence from the legal test, but the necessary product of the fact that TGL had declared that it was that investigation that was the basis of their reliance. In other words, that that was where they learned the fact, if you will, upon which they relied, that they contend proved to be false. On cross-examination, TGL conceded it had no records of a million-dollar bonus from this alleged investigation at page 21834 and 837 of the record, and the bankruptcy court held there was no credible evidence to support a finding of justifiable reliance on the representation made in the side letters alone. In other words, this was not legal error. The bankruptcy court considered the quality of TGL's investigation not because it was holding TGL to an alternative legal test, but because TGL had claimed that it was that investigation, and not any representation made by Mr. Matloff himself, that was the basis of their belief in the existence of a million-dollar bonus. With respect to the 523A6 claim, there was actually I'll skip over that for a moment. With respect to the 7237A3 claim, this is the books and records claim. I try and come up with shorthands to keep them straight myself. TGL contends that the court erroneously required them to show that Matloff acted intentionally. And they point to the fact that the statute does not say caused, does not say intentionally. What the statute does do is give a string of active verbs, concealed, destroyed, mutilated even, failed to keep or preserve, followed by the phrase, the debtor has. The debtor has concealed. The debtor has failed to keep or preserve. And section 727A3 in the legislative history in the Senate report recited in our papers also observes that 727A3 and the paragraphs around it center on the debtor's wrongdoing in connection with the bankruptcy case. And so to the extent that the bankruptcy court required a showing that Matloff acted intentionally to cause the failure or books and records, I would submit that is exactly in keeping with the legal standard as set out in the plain language of the statute. And I would submit is also consistent with the Supreme Court's recent observation in the Barton-Werfer case, which had to do with another discharge issue, when the Supreme Court observed that it matters a great deal whether a statute is phrased in the passive voice or the active voice. And here it is very much phrased in the active voice. And finally, Your Honor, on the 523A6 claim, I think TGL contends there was legal error in that the bankruptcy court presumed that the injury sustained was the entire debt. There was no presumption by the bankruptcy court on that point. This, again, is not a legal error, but a factual error by TGL. TGL testified at trial that the only debt they sought to accept from discharge here was the $8.14 million due under the personal guarantee that arose in the summer of 2017 before all of the alleged willful and malicious acts took place. And indeed, TGL's representative testified that Matloff would be liable, testified correctly, that Matloff would be liable on that guarantee without regard to subsequent acts, good or bad, in the record at page 21935. What's the value? I'm sorry, Your Honor? The value of that claim. Value of that particular claim by TGL? As I understand it, TGL contends that what the court actually should have considered was the injury sustained as a result of the allegedly willful and malicious transfers that occurred subsequent to the occurrence of the guarantee. In other words, there was an $846,000 basket of transfers made. There was a $406,000 basket of transfers made. I believe TGL contends that the court should have considered those and not just the $8 million. And the truth of the record is that number one, the $8 million is what TGL said was the debt that they sought to have discharged. And this court and every other court in the country has said, and we cited this in our papers, that you must first identify a debt and then determine if that debt is or is not non-dischargeable. Your Honor, I see that I am out of time. I thank the court for your time. We obviously ask the court to affirm the bankruptcy court's denial of relief. All right, thank you, Mr. Cooley. All right, Mr. Clark, you have rebuttal. Good afternoon, Your Honors. Catherine Clark on behalf of the Appellant Triumphant Gold Limited. Counsel said that the bankruptcy court methodically applied the law. And that is wrong. We presented four issues. We believe that those issues are legal errors. And we are here today to ask the court to, at a minimum, reverse and remand so that the bankruptcy court can apply the correct legal standards for the bankruptcy standard to these facts, this record. With respect to the 523A6 issue, the bankruptcy code requires that a debtor will lose its discharge for willful and malicious injury by the debtor to another entity or to the property of another entity. Our issue here with respect to 523A6 is that the court failed to consider the injury to the property of TGL, that being its security interest. The court confusingly identifies in its opinion at Record Cite 106 the correct standards. It talks about, generically, what the standard is in the Fifth Circuit when 523A6 claims are made. And yet, it proceeds, it goes on in its analysis and does not consider whether and to what extent TGL's security interest was infringed. It acknowledges that TGL presented evidence of security. But instead, it analyzes the evidence as if the debtor did not have encumbered assets. And that is legal error. How are you saying the district court got it wrong? I mean, it's a multi-day trial and I'm assuming all these arguments were presented to it. So where does the district court, the bankruptcy court just miss it, if you will, in terms of trying to draw a line between disagreeing with where it came out versus in a lengthy trial, how the district court just missed it for this argument of what's law and what's fact? For example, the issue of the bonus, I understand what the arguments are there. District court said, no, no proof of a bonus and sort of moves on. So that's kind of the rub. It's trying to identify exactly. You seem to be going with the court's analysis of the issues. Is that more succinctly it? No, Your Honor. 140 pages isn't enough. If there's a defect in the analysis, the application of the law to the facts, that seems to be the core of the argument, right? That is correct, Your Honor. Two brief responses to that. The first would be that N. Ray Mercer says, which is an opinion of this court, says exactly what Your Honor just said. In the context of a 523A2 claim for discharge, it said that although the bankruptcy court cited field, which is the preeminent case on the issue, and stated the applicable justifiable reliance standard, it did not apply it. Because the bankruptcy court applied an incorrect legal standard in finding no justifiable reliance on remand, it must make that determination under the correct legal standard. And that's what we're requesting happen on 523A2 and the other issues we've presented. But to respond more practically to your question about how could the bankruptcy court get this wrong when we had an extensive trial, I believe that the bankruptcy court was misguided during the post-trial briefing. Because the submissions were simultaneous, there was no opportunity for Triumphant Gold, as the plaintiff in the case, to help direct the court to the portions of the evidence, any distinctions in the law, on reply. And so that is what we're left with, is an opinion, which we're here today appealing, with respect to these four legal issues. Briefly, Your Honor, with respect to the 727A2 argument, as my colleague said, the court did not apply the plain language of the statute. Hinder or delay needed to be evaluated. The court didn't even actually apply the badges of fraud analysis. It's not in the opinion. And it certainly didn't look at whether the debtor's actions impeded TGL's ability to collect on the debt. But at first blush, it was sort of questionable whether TGL asserted the hinder delay argument to the bankruptcy court, or whether that was asserted on appeal. So our initial cursory view was, was this waived or forfeited as an argument? And that was a reason Mr. Lane got the question initially, is this teed up, or was it an argument made, but embellished here? I thought he was saying, because the court required proof of fraud, et cetera, et cetera, and the pleading said something about hinder, that it wasn't waived or forfeited. So I guess in your final shot, would we be incorrect to read that this argument was forfeited or waived? Did you say we would? Or said it a different way, is that issue amply preserved before us? It was asserted below, so we don't go off track saying, well, they waived it, and they didn't raise it until later. That's all. Our position is that it was preserved. It began in the complaint, paragraph 25 of the complaint, and it was continued in the post-trial brief. Evidence was presented at trial, and so we would ask that the court reverse, and we stand on our briefing. I see that I'm out of time. Thank you. All right. We appreciate the briefing and helping the arguments from both counsels. It's an interesting case. The case will be submitted along with the other non-orally argued cases for today, and the panel will stand in recess until 1 PM tomorrow.